McGuire, Tax-Collector, vs. Parker.

---

No. 970.

J. E. McGuire, Tax-Collector, vs. John P. Parker.

Section 12 of Act No. 119 of the Legislature of 1880, imposing a license-tax of $25 per month upon all travelling agents from other States offering any species of merchandise for sale or selling the same, violates paragraph 1 of Section 2 of Article 4 of the Constitution of the United States, and is, therefore, null and void.

APPEAL from the Fifth Judicial District Court, parish of Ouachita. Richardson, J.

---

F. G. Hudson, District Attorney, for Plaintiff and Appellant.

Stubbs & Stillman for Defendant and Appellee:

First—Section 12 of Art. 119 of 1880 violates par. 1 of sec. 2 of Art. 4 of the Federal Constitution, by abridging the privileges and immunities of the citizens of other States. Cooley on Taxation, p. 64 ; 4 Wash. C. C. 371 ; 14 Ala. 627 ; 22 Ark. 556, 564 ; 11 Allen, 268 ; 12 Wall. 418; 27 Mo. 464 ; 14 Mo. 237.

Second—That it violates par. 3, sec. 8 of Art. 1 of the Federal Constitution, which vests in Congress the sole power to regulate commerce among the several States. 4 Wheat. 316, 425 ; 7 Minn. 140 ; 8 Wall. 139 ; 1 Otto, 278.

Third—It violates Art. 203, Constitution of 1879. 10 An. 56 ; 11 An. 68 ; 13 An. 56 ; 14 An. 318 ; 20 An. 585 ; 21 An. 301.

Fourth—It violates Art. 206, same Constitution, in that the license-tax is not graduated, but fixed and absolute.

---

The opinion of the Court was delivered by

Todd, J. This is a proceeding under section 17 of Act 119, approved April 10, 1880, instituted by the sheriff and tax-collector of the parish of Ouachita, to collect from the defendant a license-tax, State and Parish, of twenty-five dollars per month for each, imposed under the 12th section of said act upon " all traveling agents from other States offering any species of merchandise for sale or selling the same."

The defendant resists the payment of this license upon several grounds, among which we find the following :

That the imposition of this license violates paragraph one of section two of article four of the Constitution of the United States, which declares " that the citizens of each State shall be entitled to all privileges and immunities of the citizens in the several States."

There was judgment for the defendant, and the plaintiff has appealed.

The question presented is whether the section of the statute impos-ing this license violates this clause of the Federal Constitution.

This provision affords one of the most important constitutional guarantees for the protection of the citizen.

It was, doubtless, intended to secure to the citizens of each State the enjoyment, every where within the limits of the Federal Union, of those fundamental privileges which belong of right to the citizens of all free governments, and to prevent an unjust discrimination on the part of any State against citizens of another State in the full and free exercise of these privileges.

We gather from the decisions of the Federal and State Courts that among the privileges and immunities this provision was intended specially to secure were the enjoyment of life and liberty, the right to acquire and possess property of every kind, to pass through and reside in any State for the purpose of trade, the right to sue in any of the State Courts, and to sell or dispose of property, real or personal, and all such similar immunities. With respect to these privileges, it was de-signed to place the citizens of all States upon a common basis of entire and perfect equality.

The increased inter-State trade and commerce of late years has de-veloped a class of business men, now recognized as a distinct profession or calling, known and designated as " commercial or traveling agents," who travel throughout the different States as representatives of com-mercial houses, and sell goods and merchandise by orders. This class of agents is made the subject of legislation by the section of the statute above referred to. Some of them are citizens of this State, and some of other States.

The section in question imposes a license of twenty-five dollars a month on " traveling agents from *other* States," but exacts no license or tax upon the same class of persons who are citizens of this State. And the question again recurs, does this violate that provision of the Federal Constitution which declares that " the citizens of each State shall be en-titled to the privileges and immunities of the several States?"

Privileges and immunities are synonymous terms. Privilege signi-fies a peculiar advantage, exemption, immunity ; immunity signifies ex-emption, privilege.

When we consider the meaning of these terms, and reflect upon the important object sought to be accomplished by this constitutional pro-vision, so essential, not only to unrestricted trade and intercourse between the States, but even to the liberties and highest privileges of the citizens of a common country, we are bound to conclude that a re-quirement of a State law that discriminates so glaringly against citizens of other States and in favor of the citizens of its own State, is designed

to defeat the objects and purposes which this wise constitutional provision was intended to secure, and, therefore, violates the spirit of the clause invoked. Nor is this a new question; for we are supported in this conclusion by the highest legal authority.

Cooley in his work on Taxation, page 64, says:

"The Federal Constitution provides that the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States. Among these privileges is that of being exempt in other States from higher taxes or impositions than are paid by the citizens of such other States. Under this provision, while it is entirely admissible to levy taxes upon the business and property of non-resident traders within the State, it is not competent to require them to take out a license and pay therefor a sum greater than that demanded of residents. Different methods of procedure may be expedient in order to secure uniformity of taxation as between residents and non-residents, and these are not objectionable, if uniformity is the purpose, and they have a tendency to secure it."

It has been held, by the Supreme Court of the United States, that the clause of the Federal Constitution referred to "relieves citizens from the disabilities of alienage in other States. It inhibits discriminating legislation against them by other States. It insures to them in other States the same freedom, privileges, and immunities possessed by the citizens of those States in the acquisition and enjoyment of property, and secures to them the equal protection of their laws in their lawful pursuits." Paul vs. Virginia, 8 Wall. 168; Ward vs. Maryland, 12 Wall. 418; Carfield vs. Coryell, 4 Washington C. C. 371, 380.

And again:

"The main object of this clause was to prevent each State from discriminating in favor of its own people, or against those of any other. It secures not only absolute equality of rights and privileges with every citizen of each State, but all such privileges and immunities in any State as are by the laws and constitution thereof secured and extended to her own people of the same class." Davis Pierce, 7 Minn. 13.

It is with reluctance that we declare null any provision of the law establishing the revenue system of the State, but we are compelled to yield to the weight of authority on the subject.

There are several other questions raised by the pleadings, but the views we have expressed on this first point presented, which are conclusive of the case, render it unnecessary to discuss them.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed with costs.